# CIRCUIT COURT OF THE CITY OF NORFOLK

Tonisa D. Burgest

v.

HSBC Bank, USA, N.A.,
as trustee for holders of
GSAA Home Equity Trust 2005-15,
and Commonwealth Trustees, L.L.C.

Case No. CL14-8747

By Judge Mary Jane Hall

October 9, 2015

This matter comes before the Court on demurrers filed by each defendant to the Complaint herein. The respective positions and multiple grounds in support of demurrer were extensively briefed and thoroughly addressed in oral argument. The Court sustains the demurrers on one ground only. The Court rules as a matter of law that the underlying transaction by which HSBC Bank acquired rights to Plaintiff's note and deed of trust was voidable and not void. Because the transaction had not been voided when HSBC took the actions of which Plaintiff complains, including the foreclosure sale of Plaintiff's residence, the causes of action articulated in the Complaint fail as a matter of law. The Court sustains the demurrers by both defendants with leave to amend granted on the narrow basis set forth herein only as to Counts I, III, and IV.

## Factual Background

The facts involved in this controversy are pleaded in extraordinary detail in the Complaint, and the Court need not recite them herein with the same level of detail. To summarize, Plaintiff took out a mortgage loan from Countrywide Home Loans, Inc., in 2005, which loan was secured by a deed of trust against her Norfolk residence. The beneficiary of that deed of trust was Mortgage Electronic Registrations Systems, Inc.₂ ("MERS"), a nominee for the lender, its successors, and assigns. Plaintiff acknowledges that as of November 27, 2007, the mortgage loan was in "arrears." She also admits that was in default prior to August of 2013.

By a document dated November 30, 2007 (Exhibit B to the Complaint) MERS assigned its beneficial interest in Plaintiff's deed of trust to HSBC, which the Complaint describes as a securitized trust operating under New York law. The Complaint alleges that the trust instrument by which HSBC operates forbids the purchase of any loan into the trust after a cut-off date and grace period unless the loan was current; and Plaintiff's loan was not. In 2011, HSBC transferred to Bank of America its claims to the note. (Exhibit D to the Complaint.) The Complaint alleges in paragraph 25, "Thereafter, HSBC claimed to purchase back the rights to the note." This transaction by which HSBC reacquired rights to the note and deed of trust forms the basis of the Court's discussion herein; yet it is the one transfer that is not documented by copy of a recorded document. The Complaint does not specify by what means HSBC "claimed" to purchase back the obligation.

The Complaint does not, as HSBC strenuously argues, allege that HSBC lacked actual possession of the Note when it effected the appointment of a substitute trustee and a subsequent foreclosure; Plaintiff alleges instead that the attempt by HSBC to purchase back the note was void under New York law because that action breached the founding principles of the securitized trust.

HSBC appointed Defendant Commonwealth Trustees, L.L.C., as a substitute trustee, and Commonwealth conducted a foreclosure sale on February 11, 2014. Plaintiff alleges that the purported appointment of the substitute trustee was invalid because HSBC was not the holder of the Note.

Although the record does not include any documentation of the transaction by which Bank of America purported to convey its interest in the loan documents back to HSBC, the parties have not disputed that such a transaction did take place. The note itself is part of the record as an exhibit to HSBC's motion craving oyer, which the Court sustained without objection; and the note is endorsed in blank. If HSBC is the holder of the note, as it argues, it had the right to enforce it. Plaintiff claims that HSBC was not the holder of the Note, not because it lacked possession but because it allegedly had no authority to reacquire a defaulted note into the securitized trust.

Plaintiff sues for breach of contract, for which she claims the remedy of rescission of the foreclosure sale and trustee's deed as well as compensatory

damages against both defendants (Count I); theft of land (Count II); and actual and constructive fraud by HSBC, consisting of the false representation that it was the holder of the note and was acting properly through Commonwealth Trustees to foreclose on the home. (Counts III and IV.)

Plaintiff's counsel acknowledged at oral argument that her claims depended upon a determination that the purported acquisition of the note by HSBC was void and not merely voidable. As the Complaint alleges:

> Because the purported repurchase by assignment of the Burgest mortgage loan to HSBC was void, HSBC (as the securitized trust) did not obtain re-purchase of the Burgest mortgage loan and lacked any interest in the Burgest mortgage loan when it subsequently (in December 2013 and in 2014) attempted to appoint Commonwealth Trustees as substitute trustee and had no standing in 2014 to seek a foreclosure sale of the home when it attempted to foreclose.

Compl., ¶ 26(OO).

The Court follows the greater weight of the case law that has examined this very legal issue under New York law and rules that such transaction was not void but voidable.

## Discussion

Plaintiff contends that HSBC was not the holder of the note because its purported reacquisition of this defaulted note violated the founding principles of the securitized trust. Under New York law, the validity of *ultra vires* actions taken by trustees is governed by Section 7-2.4 of New York Estate, Power, and Trust Law ("section 7-2.4"). This section provides that:

> If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void.

N.Y. Est. Powers & Trust Law § 7-2.4 (Consol. 2015).

The language of section 7-2.4 expressly provides that an act by a trustee is "void" if it contravenes the trust instrument and is not otherwise authorized under New York law. Plaintiff emphasizes the clarity of that statutory language and relies heavily on two New York trial court decisions that applied section 7-2.4 as written, finding that trustees' *ultra vires* actions were void *ab initio*. *Dye v. Lewis*, 67 Misc. 2d 426, 427, 326 N.Y.S.2d 172, 175 (N.Y. Sup. Ct. 1971); *Wells Fargo Bank, N.A. v. Erobobo*, 39 Misc. 2d 1220(A), 972 N.Y.S. 2d 147 (N.Y. Sup. Ct. 2013), *overruled on other grounds*, 127 A.D. 3d 1176, 9 N.Y.S.3d 312 (N.Y. App. Div. 2015), *appeal*

*denied* 2015 N.Y. Slip Op. 82800 (N.Y. Aug. 27, 2015). This approach has sporadically appeared in other New York trial court decisions, e.g., *Auroa Loan Services, L.L.C. v. Scheller*, No. 2009-22839, 43 Misc. 3d 1226(A), 2014 N.Y. Misc. LEXIS 2276, at *7 (N.Y. Sup. Ct. May 22, 2014); *In re Dana*, 119 Misc. 2d 815, 820, 465 N.Y.S. 2d 102, 105 (N.Y. Sup. Ct. 1982); and at least one other jurisdiction has adopted this position. *Glaski v. Bank of America*, 218 Cal. App. 4th 1079, 1096-97, 160 Cal. Rptr. 3d 449; 464 (Cal. App. 2013).

Crucially, however, other New York trial courts have rejected the literal reading of section 7-2.4 that Plaintiff asks this Court to apply. Many courts applying this statute have concluded that a trustee's *ultra vires* action is voidable, rather than void. The Supreme Court of the State of New York, Appellate Division has held that a trust beneficiary may ratify an act by a trustee that would otherwise be *ultra vires* under the terms of the trust instrument. *Mooney v. Madden*, 193 A.D.2d 933, 597 N.Y.S.2d 775, 776 (N.Y. App. Div. 1993); *see also, United States Bank, N.A. v. Duthie*, 45 Misc. 3d 1218(A), 2014 N.Y. Misc. LEXIS 4874, at *10 (N.Y. Sup. Ct. Nov. 17, 2014) (citing *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 90 (2d Cir. 2014); *Berezovskaya v. Deutsche Bank Nat'l Trust Co.*, No. 12 CV 6055 (KAM), 2014 U.S. Dist. LEXIS 127532 (S.D.N.Y. Aug. 1, 2014) ("[L]ike the United States Court of Appeals, Second Circuit, this court declines to follow the holding in *Auroa* as acts may be ratified by the trust's beneficiaries and are voidable . . . .") (quotation marks omitted); *Martinez v. Estate of John P. Carney*, 940 Misc. 3d 1219(A), 2013 N.Y. Misc. LEXIS 3272, at *21 (N.Y. Sup. Ct. May 31, 2013) ("EPTL § 7-2.4 . . . makes *voidable* any . . . action by the trustee that is in contravention of the trust) (emphasis added).

Courts in other jurisdictions considering this issue have likewise concluded that unauthorized actions by a trustee are voidable, notwithstanding the statute's use of the term "void." *See, e.g., Rajamin*, 757 F.3d at 90; *Ferguson v. Bank of N.Y. Mellon Corp.*, No. 14-20585, 2015 U.S. App. LEXIS 17265, at *8-10 (5th Cir. Oct. 1, 2015) (holding that, despite the statute's use of "void," "New York courts . . . instead have treated a trustee's act in violation of the trust as voidable but not void"); *Berezovskaya*, 2014 U.S. Dist. LEXIS 127532, at *25-26; *Davis v. Countrywide Home Loans, Inc.*, 1 F. Supp. 3d 638, 644 (S.D. Tex. 2014); *Calderon v. Bank of Am., N.A.*, 941 F. Supp. 2d 753, 767 (W.D. Tex. 2013); *Wood v. Germann*, 331 P.3d 859, 861, n. 5 (Nev. 2014); *Dernier v. Mortg. Network, Inc.*, 195 Vt. 113, 125-27, 87 A.3d 465, 474 (2013); *Bank of Am., N.A. v. Bassman FBT, L.L.C.*, 2012 Ill. App. 2d 110729 ¶¶ 18-21, 981 N.E.2d 1, 8-10 (2012).

The discussion of this issue by the United States Court of Appeals for the Second Circuit is persuasive:

> While a few other courts have reached conclusions about [section 7-2.4] similar to that of the *Erobobo* court, we are not

aware of any New York appellate decision that has endorsed this interpretation of § 7-2.4. And most courts in other jurisdictions discussing that section have interpreted New York law to mean that a transfer into a trust that violates the terms of a PSA is voidable rather than void. . . .

In sum, we conclude that as unauthorized acts of a trustee may be ratified by the trust's beneficiaries, such acts are not void but voidable; and that under New York law such acts are voidable only at the instance of a trust beneficiary or a person acting in his behalf. Plaintiffs here are not beneficiaries of the securitization trusts; the beneficiaries are the certificate holders. . . . The law of trusts provides no basis for plaintiffs' claims.

*Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d at 90 (citations omitted).

New York trial courts deciding whether section 7-2.4 renders a trustee's *ultra vires* action void or merely voidable have ruled both ways. The Court of Appeals of New York has not interpreted this statute, so the conflict remains unresolved. However, "such matters are for New York courts to reconcile — not this one." *Bassman FBT*, 2012 Ill. App. 2d ¶ 21, 981 N.E.2d at 9. In the absence of a decision resolving this question by the Court of Appeals of New York, the Court is persuaded by the majority view interpreting section 7-2.4 to provide that trustee actions in contravention of the trust instrument are voidable, rather than void.

This conclusion compels the Court to hold that HSBC's purported reacquisition of the note was not void *per se*. Plaintiff thus cannot attack the repurchase of the note and the appointment of Commonwealth on this ground. Because this ground forms the basis of Plaintiff's claims for breach of contract (Count I) and fraud (Counts III and IV), the Court sustains the demurrers of both defendants to those counts.

The Court cannot rule, however, as a matter of law based on the pleadings that HSBC *was* the holder of the Note with attendant rights to appoint a substitute trustee and direct a foreclosure, because the Complaint alleges otherwise: "HSBC instructed Commonwealth Trustee to foreclose on the home. However, HSBC was never the holder of the note and had no authority to instruct anyone to foreclose on the home." (Compl. ¶ 29.)

With this clear allegation that HSBC was not the holder, and interpreting the Complaint in the light most favorable to Plaintiff, the Court acknowledges that Plaintiff might have another basis to contest HSBC's claim to be the holder of the Note. Therefore, the Court grants leave to Plaintiff to amend its first, third and fourth counts to permit Plaintiff to clearly allege any such basis.

Count II, alleging theft of land, does not state a cognizable cause of action. The Court's research revealed no authorities recognizing a cause

of action for "theft of land" under Virginia law. This count is dismissed without leave to amend.

## Conclusion

Defendants' Demurrers to Counts I, III, and IV are sustained. Plaintiff is granted leave to amend to state any facts upon which she relies to support her allegation that HSBC was not the holder of her deed of trust note at the time of the foreclosure. Any amended pleading must be filed within twenty-one days. The demurrer to Count II is sustained without leave to amend.

## February 26, 2016

The Court has previously sustained Defendants' demurrers to Plaintiff's complaint and granted her leave to amend only to allege any other factual basis for her legal conclusion that HSBC was not the holder of her deed of trust note when it appointed a substitute trustee and directed the foreclosure sale of her home. The matter is now back before the Court on demurrers to Plaintiff's Amended Complaint. Because the Amended Complaint lacks a factual basis to support Plaintiff's legal conclusions and requested relief and for the reasons stated herein, the demurrers are sustained.

## Factual Background

The Complaint and the Amended Complaint are quite detailed in the description of the various transactions that led to the foreclosure sale that Plaintiff now challenges, and those details are not restated here. Briefly, Plaintiff obtained a mortgage loan from Countrywide Home Loans, Inc., in 2005, which loan was secured by a deed of trust against her Norfolk residence. The beneficiary of that deed of trust was Mortgage Electronic Registrations Systems, Inc. ("MERS"), a nominee for the lender. Plaintiff acknowledges that, as of November 27, 2007, the mortgage loan was in "arrears." The following are the key dates relating to the instant controversy:

November 30, 2007 (Exhibit B to the Amended Complaint): MERS assigned its beneficial interest in Plaintiff's deed of trust to HSBC, which the Complaint describes as the trustee for a securitized trust operating under New York law.

August 1, 2011 (Exhibit D to the Complaint): HSBC transferred to Bank of America its claims to the note and deed of trust.

July 23, 2013 (Exhibit C to the Amended Complaint): Bank of America assigned its interest in the note and deed of trust to Nationstar Mortgage, L.L.C.

December 16, 2013 (Exhibit D to the Amended Complaint): HSBC appointed Defendant Commonwealth Trustees, L.L.C., as a substitute trustee in a document signed by "Nationstar Mortgage, L.L.C., as Attorney in Fact for HSBC Bank USA."

February 11, 2014: Commonwealth Trustees conducted a foreclosure sale of Plaintiff's home, which HSBC purchased via a credit bid against Plaintiff's indebtedness under the Note.

In the present action, Plaintiff attacks the validity of the foreclosure sale on the basis that HSBC was not the holder of the Note when it purported to appoint Commonwealth as substitute trustee. If the appointment of Commonwealth was unauthorized and of no effect, then Commonwealth had no authority under the Deed of Trust to initiate foreclosure proceedings.

The Court rejected Plaintiff's primary legal theory supporting its conclusion that HSBC was not the holder of the Note at the time it appointed the substitute trustee. *See* Opinion and Order Sustaining Demurrers (Oct. 9, 2015) (HSBC's reacquisition of the Note from Bank of America was not a void transaction that gave HSBC no right to foreclose but merely a voidable one). The Court, however, granted leave to amend as to the claims for fraud and breach of contract so that Plaintiff could allege any other factual basis to challenge HSBC's claimed status as holder of the Note.

Plaintiff filed her Amended Complaint on October 30, 2015, in which she reasserts her original claims for fraud and breach of contract. Defendants demurred to the Amended Complaint on a number of grounds, including (1) Plaintiff lacks standing to challenge any of the transactions and transfers to which she was not a party, such as the appointment of the substitute trustee; and (2) Plaintiff has not alleged facts to support her legal conclusion that HSBC was not the holder of the Note when it appointed a substitute trustee.

Commonwealth demurs on the basis that the Amended Complaint seeks no affirmative relief against it.

### Standard of Review

In reviewing a demurrer, the court must "determine whether a motion for judgment states a cause of action upon which the requested relief may be granted." *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 557, 708 S.E.2d 867, 869 (2011) (quoting *Abi-Najm v. Concord Condo., L.L.C.*, 280 Va. 350, 356-57, 699 S.E.2d 483, 486 (2010)). "A demurrer tests the legal sufficiency of a motion for judgment," *Harris v. Kreutzer,* 271 Va. 188, 195, 624 S.E.2d 24, 28 (2006), and "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from alleged facts." *Cox Cable Hampton Rds., Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991) (citing *Palumbo v. Bennett*, 242 Va. 248, 249, 409 S.E.2d 152 (1991)). A demurrer does not, however, "admit the correctness of the pleader's conclusions of law." *Lewis v. Kei*, 281 Va. 715, 723, 708 S.E.2d 884, 890 (2011) (quoting *Dodge v. Trustees of Randolph-Macon Woman's College*, 276 Va. 1, 5, 661 S.E.2d 801, 803 (2008)).

Courts deciding a demurrer may consider the allegations made in the pleadings and in any "documents attached thereto." *Mansfield v. Bernabei,* 284 Va. 116, 121, 727 S.E.2d 69, 72 (2012) (citing *Caudill v. County of Dinwiddie,* 259 Va. 785, 788, 529 S.E.2d 313, 314 (2000)). In performing its analysis, the court "may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are part of the pleadings." *Schaecher v. Bouffault,* 290 Va. 83, 772 S.E.2d 589, 602 (2015). Finally, "mere conclusory statement[s]," without adequate factual support, "[do] not satisfy the pleading requirement of alleging facts upon which relief can be granted" and are "insufficient to withstand a demurrer." *Dean v. Dearing,* 263 Va. 485, 490, 561 S.E.2d 686, 690 (2002).

## *Discussion*

### A. *Standing*

Defendants first contend that Plaintiff lacks standing to challenge the appointment of Commonwealth because she was neither a party to, nor an intended beneficiary of, the Appointment of Substitute Trustee. The Supreme Court of Virginia has explained standing as follows:

> The concept of standing concerns itself with the characteristics of the person or entity who files suit. The point of standing is to ensure that the person who asserts a position has a substantial legal right to do so and that his rights will be affected by the disposition of the case.

*Cupp v. Board of Supervisors,* 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984) (citation omitted). In Virginia, "[a] party has standing to sue if it has sufficient interest in the subject matter to insure that the parties will be actual adversaries and to insure that the issues will be fully and faithfully developed." *Weichert Co. v. First Commercial Bank,* 246 Va. 108, 109, 431 S.E.2d 308, 309 (1993) (citing *Cupp,* 227 Va. at 589, 318 S.E.2d at 411). Further, "a party claiming standing must demonstrate a personal stake in the outcome of the controversy." *Goldman v. Landsidle,* 262 Va. 364, 371, 552 S.E.2d 67, 71 (2001).

As a general rule under Virginia law, only parties, their privies, and intended third-party beneficiaries of a contract have standing to enforce it. *See, e.g.,* Va. Code § 55-22 (1950); *Kelley v. Griffin,* 252 Va. 26, 29, 471 S.E.2d 475, 477 (1996); *Aetna Cas. & Sur. Co. v. Fireguard Corp.,* 249 Va. 209, 214, 455 S.E.2d 229, 231-32 (1995); *Cottrell v. General Sys. Software Corp.,* 248 Va. 401, 403, 448 S.E.2d 421, 422 (1994) (quoting *Cemetery Consultants, Inc. v. Tidewater Funeral Dirs. Ass'n,* 219 Va. 1001, 1003, 254 S.E.2d 61, 62 (1979)).

HSBC observes that federal courts in Virginia generally hold that borrowers in default on their loan obligations lack standing to challenge the appointment of a substitute trustee under a deed of trust. *See, e.g., Jones v. Fulton Bank, N.A.*, 565 Fed. App'x 251, 253 (4th Cir. 2014); *Cagle v. CitiMortgage, Inc.*, No. 3:13CV807, 2015 U.S. Dist. LEXIS 57612, at *27-28 (E.D. Va. May 1, 2015); *Lewis v. Nationstar Mortg., L.L.C.*, No. 3:13CV00026, 2014 U.S. Dist. LEXIS 11113, at *7-8 (W.D. Va. Jan. 29, 2014); *Morrison v. Wells Fargo Bank, N.A.*, 30 F. Supp. 3d 449, 454 (E.D. Va. 2014); *Bennett v. Bank of Am., N.A.*, 3:12CV34-HEH, 2012 U.S. Dist. LEXIS 54725, at *21-22 (E.D. Va. Apr. 18, 2012).

Importantly, however, standing in federal court is a separate inquiry from standing in state court. *See, e.g., Hollingsworth v. Perry*, 133 S. Ct. 2652, 2667 (2014) ("standing in federal court is a question of federal law, not state law"). Whether a plaintiff has standing to bring an action in federal court is governed by a three-prong test rooted in the "case or controversy" requirement of Article III of the Constitution of the United States. *Horne v. Flores*, 557 U.S. 433, 445 (2009) (citation omitted). As Article III standing doctrine only applies to actions brought in federal court, the rationale adopted by federal courts who have addressed this issue does not control whether Plaintiff has standing to bring the present action under Virginia law.

At least one Virginia court has found that a borrower in default does have standing to challenge the appointment of a substitute trustee under facts similar to the case at bar. In *Williams v. HSBC Finance Corp.*, No. CL10-877 (Albemarle Cnty. Cir. Ct. Mar. 30, 2011), Judge Higgins wrote:

> [T]here can be no doubt that [plaintiffs] have a sufficient interest in the outcome of the case to insure that [they] will be an actual adversary to HSBC and that the issues will be fully and faithfully developed. The plaintiffs stand to lose their home hinging on the outcome of the present case, and it is hard to fathom a situation where a party would have a greater interest.

*Id.* at *2. To the same effect, the Supreme Court of California on February 18, 2016 reversed a decision of its state Court of Appeals on a standing issue and announced this holding:

> [A] borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment.

*Yvanova v. New Century Mortg. Corp.* No. S218973, slip op. at 2 (Cal. Feb. 18, 2016). The Court observed, "It is no mere 'procedural nicety,' from a contractual point of view, to insist that only those with authority to foreclose on a borrower be permitted to do so." *Id.* at 22 (citing Adam J. Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title*, 63 Duke L.J. 637, 650 (2013)).

The Court finds the decisions of Judge Higgins and the Supreme Court of California to be more persuasive than the contrary authority and concludes that the Amended Complaint contains sufficient facts to establish that Plaintiff has standing to challenge to appointment of Commonwealth as substitute trustee.

### B. *HSBC's Status as Noteholder*

In the Amended Complaint, Plaintiff re-alleges that HSBC's appointment of Commonwealth was ineffective because Nationstar, rather than HSBC, was the noteholder when HSBC executed the Appointment of Substitute Trustee on December 13, 2013. Am. Compl. ¶ 25. To support this allegation, Plaintiff points to the written instrument documenting the July 2013 transfer of the Note from Bank of America to Nationstar and notes the lack of any subsequent instrument transferring it from Nationstar to HSBC. *See* Am. Compl. Ex. C. Plaintiff urges the Court to conclude from the absence of such a document that Nationstar, and not HSBC, remained the noteholder on December 13, 2013, the date of the Appointment. If Nationstar held the Note, HSBC's attempt to appoint Commonwealth was ineffective.

The Court cannot reach the suggested conclusion merely on the basis of the alleged gap in the documentary record chronicling transfers of the Note. The lack of a recorded document, without more, is insufficient to show that HSBC did *not* acquire the Note prior to Commonwealth's appointment. Indeed, recordation of an assignment is optional under Virginia law; the nonexistence of a recorded instrument has no bearing on whether an assignment occurred. Va. Code § 55-66.01 (1950) ("Whenever a debt . . . secured by a deed of trust . . . has been assigned, the assignor or the assignee, *at its option, may* cause the instrument of assignment to be recorded. . . .") (emphasis added). In prescribing the procedure by which an assignment of a debt may be recorded, the General Assembly was careful to provide that "[n]othing in this statute shall imply that recordation of the instrument of assignment or a certificate of transfer is necessary in order to transfer to an assignee the benefit of the security provided by the deed of trust. . . ." *Id.* In view of this statute, the Court concludes that the absence of a recorded writing that documents a transfer of the Note to HSBC after July 2013 does not establish that HSBC did not possess the Note on December 13, 2013.

Further, and more simply, the language of the Appointment of Substitute Trustee itself contradicts Plaintiff's reasoning. The Appointment, which the Court may consider at the demurrer stage as properly part of the pleadings,

recites that HSBC *was* the holder of the Note. Plaintiff conceded at oral argument that HSBC was in fact the holder of the Note on February 11, 2014, the date of the foreclosure sale, because it purchased the property via a credit bid. Thus, all parties agree that, at some point between July 13, 2013 (the assignment to Nationstar) and February 11, 2014 (the date of the foreclosure sale), HSBC acquired the Note in a transaction that was unrecorded. Plaintiff has no basis to argue that the acquisition date followed, rather than preceded, the Appointment of Substitute Trustee. The lack of a recorded document sheds no light on the question. The Court, therefore, relies upon the language of the Appointment of Substitute Trustee in which HSBC recites that it is the Noteholder and rules that Plaintiff has not alleged a sufficient factual basis by which the trier of fact could come to a different conclusion.

In sustaining Defendants' demurrers to the original complaint, the Court granted Plaintiff leave to file an amended complaint alleging some credible basis for its assertion that HSBC was not the holder of the Note when it appointed Commonwealth in December 2013. Plaintiff's Amended Complaint fails to plead specific facts that support that conclusion. Accordingly, the Court concludes that the Amended Complaint fails to adequately allege that Defendants breached the Deed of Trust by directing that Commonwealth conduct a foreclosure sale or engaged in fraud by misrepresenting its authority to foreclose on the home to Plaintiff.

## Conclusion

For the foregoing reasons, the Court sustains Defendants' demurrers to the Amended Complaint without further leave to amend.